JOHNSON, STATE REVENUE AGENT, *v.* HAZELHURST HARD-
WARE CO.

[74 South. 294, Division B.]

LICENSES. *Subject of tax. Target.*

The privilege tax of twenty-five dollars imposed by Code 1906, section 3887, upon dealers selling target or flobert rifles, applies to flobert rifles or other like rifles manufactured principally for

target purposes, it was not the intention of the legislature to tax dealers in rifles adapted to useful purposes, and since there are two kinds of flobert rifles it devolves on the officer seeking to collect the tax to prove that the rifles sold come under the provisions of the statute.

APPEAL from the circuit court of Copiah county. HON. J. B. HOLDEN, Judge.

Suit by J. C. Johnson, state revenue agent, against the Hazelhurst Hardware Company. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*M. S. McNeil,* for appellant.

Section 3387 of the Code of 1896, provides: Dealers in deadly weapons.—On each person or firm dealing in pistols, dirk knives, sword canes, brass or metallic knuckles, or other deadly weapons (shotguns and rifles excepted) . . . one hundred dollars. On each firm or dealer selling air guns, target or Flobert rifles, and this shall apply even if the same has a license to sell merchandise, pistols or cartridges. . . . twenty-five dollars.

Counsel's argument for appellee that it was the intention of the legislature to so penalize the sale of air guns, target or Flobert rifles so as to prevent and curtail the sale of such weapons is in our judgment perhaps correct.

It is a matter of common knowledge that air guns, target or Flobert rifles are used for pleasure and that rifles of a larger caliber are used for service or hunting rifles.

It is also a matter of common knowledge that air guns, target or Flobert rifles were used chiefly by children, and for these reasons alone it may have been that the legislature intended to fix the privilege tax at an amount as would deter, prevent and curtail the sale, and thus prevent mischief that might result from the use of such weapons in the hands of children and pleas-

ure seekers who might undertake to demonstrate their skill of marksmanship without regard to the place or circumstances under which they did so.

Counsel does not undertake to distinguish the difference between the target and Flobert rifle, but evidently the legislature saw a difference, and intended to make a difference, otherwise the section would not have read 'air guns, target or Flobert rifles.' So, as we contend, the question as to whether or not appellee is liable for the tax, hinges upon the proposition discussed in appellant's opening brief: "What is a target rifle?" and to place any other interpretation than the interpretation placed upon it by appellant would render the words 'target and rifle' in the statute absolutely worthless and of no effect."

We therefore submit with confidence that upon a plain, common sense interpretation of the statute that this case should be reversed and judgment rendered here in favor of the appellant.

*J. H. Wilson*, for appellee.

The second section of this act provides: "On each firm or dealer in air guns, target or Flobert rifles (and this shall apply even if the same has a license to sell merchandise, pistols of cartridges) twenty-five dollars."

The tax is placed upon a firm or dealer selling air guns, target or Flobert rifles, and the amount of the tax is out of all proportion to the profits that could usually be derived from dealing in these articles, and the manifest purpose of the same was to restrain persons from dealing in them.

From the testimony we learn that rifles formerly known as Flobert or target rifles, which were manufactured with a smooth bore and used exclusively for target purposes, are now no longer manufactured.

From the examination of this statute it is clear that the legislature had in mind two classes of fire arms; one

they call shot guns and rifles, and the other air guns, target or flobert rifles. Dealers in shot guns and rifles, are not required to pay a privilege tax. They are wholly exempt. Dealers in air guns, target or Flobert rifles are taxed. The testimony in the case discloses the fact that rifles are manufactured of various sized calibers, the smallest being twenty-two caliber.

It was also stated that the standard make twenty-two caliber rifle and also rifles of larger caliber up to thirty-two are frequently used in shooting galleries, but nevertheless, they are not known as target rifles, but are in use by the public generally for such purposes as rifles are generally used.

The appellee dealt in rifles of all calibers of standard makes. It is contended by counsel for appellant that because of the fact that she dealt in rifles of twenty-two caliber that she was therefore liable for the payment of the tax of twenty-five dollars provided in the section above quoted.

It is not contended that she sold ''air guns, target or Flobert rifles,'' but that since the regular twenty-two caliber service rifle is now used generally for target practice in shooting galleries that, therefore, they come within the class intended by the legislature to be taxed, and she having dealt in them has therefore become liable for the tax.

We are unable to agree with this contention. The language of the statute we think is clear and unequivocal that it was the intention of the legislature to exempt dealers in shot guns and rifles from the payment of a tax, but to impose a tax upon dealers ''in air guns, target or Flobert rifles.''

The fixing of the classification was based upon the nature of the firearms and not upon the use to which it was put. Dealers in service rifles are exempt from the payment of any tax, and this regardless of the caliber or the use to which they are put. This statute imposes a heavy penalty upon the firm or dealer selling air guns, target

or Flobert rifles, and must be strictly construed in favor of appellee.

In the case of *V. & M. Railroad Co.* v. *The State,* 62 Miss. 105, Cooper, J., speaking for the court, holds that: "Laws imposing privilege taxes are to be construed in favor of the citizen and no occupation is to be taxed unless clearly within the provisions of such law, thereby reaffirming the same rule announced in the case of *Ex parte Taylor,* 68 Miss. 478, in which Chalmers, C. J., delivered the opinion of the court in the case involving the right of the city of Vicksburg to impose payment of privilege tax held: "The rule is well settled that laws imposing duties or taxes are not to be construed beyond the natural import of the language, and are never to be construed as imposing burdens upon citizens upon doubtful interpretation."

This court again reaffirmed this principle in the case of *Alfred Wilby* v. *State of Mississippi,* 93 Miss. 797, in which Mayes, J., delivered the opinion of the court interpreting section 3854 of the Code of 1906, imposing a privilege tax on every citizen or person doing a plumbing business, holds that: "Laws of this nature approximate an abridgment of the liberty of the citizen guaranteed to him by the Fourteenth Amendment to the Constitution of the United States, and should receive the strictest construction. Liberty in its broad sense must consist in the right to follow any of tthe ordinary callings of life without being trammelled."

And so it is we maintain that even if there is a doubt as to whether dealing in service rifles of twenty-two caliber makes the dealer liable to the tax here sought to be imposed, still, that doubt should be resolved in favor of the defendant.

We maintain, however, that there can be no doubt of the legislative intent expressed in the section under review. The language used by the court is clear, and this court will not go outside of the language to read into it that which does not clearly appear to be there. See

*State* v. *Taylor,* 100 Miss. 544; *Abbott* v. *State,* 106 Miss. 340.

ETHRIDGE, J., delivered the opinion of the court.

In this case the appellant sued appellee for privilege tax and damages for selling target rifles in the years 1913 and 1914. The proof shows that the appellee carried in stock and sold twenty-two caliber rifles a part of the year 1914. It also shows that Flobert rifles have gone out of use and are no longer manufactured, but that a twenty-two rifle, with rifled barrel, is now used in shooting galleries, and that the Flobert rifle had a smooth bore. The proof does not show whether the rifles sold by appellee were such as carried a long cartridge or a short cartridge; whether high power or low power. We know there are two classes of twenty-two rifles, high power and low power. It was incumbent on the appellant to prove the class sold, and this was not properly proven. The tax is imposed on air guns, or Flobert or target rifles. The tax is now on target rifles, since Flobert rifles are no longer manufactured. What is a target rifle? All rifles are at times used for target practice, and all rifles are sometimes used for other purposes than target practice. Manifestly the statute meant to impose a privilege tax on such rifles as were principally used for target practice. We think it means such rifles as shoot twenty-two short cartridges, or, in other words, low power twenty-two rifles. The plaintiff having failed to show the rifles sold are of this class, the judgment of the lower court is affirmed.

*Affirmed.*

STEVENS, J. (specially concurring). The statute (Code 1906, section 3887), a portion of which we are here called upon to construe, reads as follows:

"Dealers in Deadly Weapons.—On each person or firm dealing in pistols, dirk knives, sword canes, brass or metallic knuckles, or other deadly weapons (shotguns and rifles excepted), one hundred dollars.

"And which shall be in addition to all and any other taxes or privileges paid.

"On each firm or dealer selling air guns, target or Flobert rifles (and this shall apply even if the same has a license to sell merchandise, pistols or cartridges), twenty-five dollars."

Under the last section of this statute demand was here made upon appellee company for a tax of twenty-five dollars for dealing in target rifles. It is puzzling to find the exact legislative intent from the words employed in the last section of this statute. It is certain that the first section imposes no tax whatever upon any one for dealing in shotguns and rifles. A rifle has a well-defined meaning. It is a matter of common knowledge, I take it, that prior to the enactment of the Code of 1906 what are termed as "Flobert rifles" were commonly used in shooting galleries and for innocent target practice of that kind. I am inclined to think, therefore, that the legislature meant to impose this tax on dealers in air guns, Flobert rifles, and other smooth-bore rifles that might be manufactured like Flobert rifles for target purposes. Under this view the statute would read, "air guns, target, that is to say, Flobert, or other like rifles." It certainly was not the legislative purpose to tax dealers in rifles adapted to useful purposes. I take it that it is a matter of common knowledge that many twenty-two rifles serve useful purposes. The statute is one that should be strictly construed and not enlarged by judicial interpretation. It is a matter then of no concern that Flobert rifles are no longer manufactured. It is possible to make use of a thirty-two Winchester rifle for target purposes, but the mere use of a thirty-two Winchester rifle for target purposes would not, in my judgment, subject the dealer in such a rifle to the payment of the tax here attempted to be imposed. I think the legislature was here attempting to tax dealers in that class of instruments used by boys and sportsmen in and around shoot-

ing galleries and other like places of amusement, not only to collect a little additional revenue, but possibly to discourage the use of such weapons in our state.